La Jueza Asociada Señora Pabón Charneco
emitió la opinión del Tribunal.
Hoy, en lugar de evaluar la validez de la retroactividad de un Contrato de Obra otorgado por un municipio y un ente privado —como lo hicimos en ALCO Corp. v. Mun. de Toa Alta, 183 D.P.R. 530 (2011) — , nos corresponde exami-nar la validez de un Contrato de Arrendamiento de Cosas pactado retroactivamente por el Estado y un ente privado. *734 Específicamente, debemos determinar si procede el pago de cánones de arrendamiento en virtud de un Contrato que fue otorgado posterior al uso y disfrute de la propiedad en cuestión. Resolvemos, a priori, que la contratación guber-namental retroactiva es contraria a nuestros preceptos de contratación gubernamental que propenden a la sana ad-ministración pública.
I
El 28 de julio de 2009 Jaap Corporation (en adelante Jaap o recurrida) presentó una Demanda sobre Sentencia Declaratoria y Cobro de Dinero en contra del Gobierno de Puerto Rico. Surge de los hechos estipulados por las partes, que el Departamento de Estado arrendó a Jaap los pisos tres (3) y cuatro (4) del edificio número 151 de la Calle Fortaleza esquina Calle San José de Viejo San Juan. Cada piso fue arrendado mediante Contratos separados. El arrendamiento del tercer piso fue acordado mediante el Contrato Núm. 2001-000043, el cual fue suscrito el 27 de octubre de 2000. Sin embargo, se dispuso que el Contrato entraría en vigor desde el 16 de enero de 2000 y regiría hasta el 30 de junio de 2000. Las partes también acordaron que
... si a su vencimiento ninguna de las partes contratantes ha notificado a la otra su intención de enmendarlo o resolverlo, se entenderá renovado sin necesidad de notificación previa de ambas partes, por años económicos sucesivos a partir del pri-mero de julio hasta completar un máximo de cinco (5) años o hasta completar un máximo de diez (10) años si el contrato corresponde a oficinas y dependencias localizadas en Estados Unidos o país del extranjero incluyendo las renovaciones.(1)
No hay controversia en cuanto a que este contrato fue presentado en la Oficina del Contralor.
*735 Pasados cinco (5) años, Jaap comenzó una serie de co-municaciones dirigidas a suscribir otro Contrato de Arrendamiento. En una de las cartas la corporación señaló que el Contrato de las oficinas de las Juntas Examinadoras que ubican en el tercer piso del edificio en cuestión había vencido desde enero de 2005.(2) Según arguye la recurrida, las partes comenzaron negociaciones y discusiones sobre la otorgación de un nuevo Contrato. De hecho, el 1 de julio de 2005 se redactó un documento intitulado “Contrato de Arrendamiento de Locales por Cinco Años o Menos o Hasta 10 años” para el alquiler del tercer piso.(3) Ese documento entraría en vigor el “1 de julio de 2005 sujeto a la aproba-ción de la Administración de Servicios Generales”.(4) Asi-mismo, dispuso que regirían las relaciones contractuales hasta el 30 de junio de 2006.(5) Empero, este documento, aunque contiene al margen izquierdo las iniciales “W.G.A.” y “C.E.D.”, nunca llegó a ser firmado por las partes; tam-poco fue aprobado por la Administración de Servicios Generales.(6)
No fue hasta el 18 de julio de 2007 cuando las partes finalmente suscribieron el Contrato Núm. 2008-000009, referente al arrendamiento del piso tres (3). En ese Con-trato las partes pactaron que el Departamento de Estado compensaría a Jaap por una suma ascendente a ciento die-ciséis mil cuatrocientos cincuenta y nueve dólares con once centavos ($116,459.11); cantidad correspondiente al arren-damiento del tercer piso desde el 1 de julio de 2005 hasta el 30 de junio de 2006.
Sin embargo, surge del expediente que aunque el De-partamento de Estado ocupó el tercer piso desde el 1 de *736 junio de 2005 hasta el 1 de febrero de 2008, esta entidad gubernamental nunca emitió pago por el arrendamiento del piso tres (3) correspondiente a la renta de este periodo. Según la recurrida, las rentas adeudadas ascienden a un total de trescientos veinte mil quinientos veintiún dólares con cuarenta y seis centavos ($320,521.46). El 12 de mayo de 2008 y el 30 de diciembre de 2008 las dos (2) Directoras de la Oficina de Asuntos Legales del Departamento de Es-tado, Ledas. Lourdes Adrienne Robles Torres y Patricia A. Castaing Lespier, suscribieron cartas a la representación legal de Jaap en las que reconocieron la totalidad de la deuda de dicha agencia.
Así las cosas, Jaap instó una Demanda en Cobro de Dinero contra el Departamento de Estado. Luego de varias incidencias procesales, el Tribunal de Primera Instancia resolvió, en lo pertinente a la reclamación del tercer piso, que no existía controversia en cuanto a que las partes otor-garon un Contrato de Arrendamiento el 18 de julio de 2007 para compensar a Jaap por la suma de ciento dieciséis mil cuatrocientos cincuenta y nueve dólares con once centavos ($116,459.11) y así liquidar la deuda existente por el alqui-ler desde el 1 de julio de 2005 hasta el 30 de junio de 2006. Además, en virtud del mismo Contrato Núm. 2008-000009, determinó que el arrendamiento del tercer piso se extendió por el término de vigencia del Contrato hasta el 30 de julio de 2007. Resolvió, además, que el Departamento de Estado permaneció ocupando el piso tres (3) hasta febrero de 2008, con la aquiescencia de Jaap, por lo cual había operado la figura de la tácita reconducción. En fin, el Tribunal de Pri-mera Instancia declaró “con lugar” la Demanda y ordenó el pago de la totalidad de su reclamación.
Inconforme, el Departamento de Estado recurrió al Tribunal de Apelaciones. Planteó que la deuda no estaba sus-tentada por un contrato debidamente perfeccionado, con-forme a la normativa aplicable a la contratación guberna- *737 mental. De igual forma, argüyó que no podía aplicarse la norma de la tácita reconducción a este caso pues obra en contra del interés público y del buen manejo de fondos del Estado.
Sometida la controversia, el Tribunal de Apelaciones dictaminó que se justificaba el pago de cánones de arren-damiento devengados retroactivamente para el período comprendido desde el 1 de julio de 2005 hasta el 30 de junio de 2006. Razonó que el Contrato Núm. 2008-000009 se redujo a escrito y cumplió con los demás requisitos que se exigen para la contratación gubernamental. En cuanto a la retroactividad del Contrato, el tribunal apelativo inter-medio entendió que la única disposición de ley que impide la contratación gubernamental retroactiva es la Ley Núm. 237-2004, la cual no aplicaba al caso de autos ya que regla-menta únicamente la contratación de servicios profesiona-les o consultivos, mas no rige los Contratos de Arrenda-miento de Cosas.(7)
A contrario sensu, en cuanto al periodo comprendido desde 1 de julio de 2006 al 30 de julio de 2007, el tribunal a quo resolvió que el Contrato Núm. 2008-000009 carecía de un elemento esencial de los contratos de arrendamiento de cosas: precio cierto. Es decir, el Tribunal de Apelaciones interpretó que del referido Contrato no surgía un canon de arrendamiento pactado para el periodo comprendido entre el 1 de julio de 2006 al 30 de julio de 2007. Asimismo, dispuso que cualquier esfuerzo para establecer un precio o canon de arrendamiento, en el mejor de los casos, conduci-ría a la especulación.
En cuanto a la ocupación del tercer piso durante el pe-riodo del 1 de agosto de 2007 hasta el 29 de febrero de 2008, el Tribunal de Apelaciones revocó la determinación del tribunal de instancia. El foro apelativo intermedio con- *738 cluyó que no aplicaba la figura de tácita reconducción por-que ello equivaldría a realizar mi nuevo contrato sin cum-plir con los rigurosos requisitos y formalidades como son el consentimiento escrito y expreso —no tácito— y el registro del contrato en la Oficina del Contralor. Según el tribunal apelativo intermedio, permitir la operación de la figura de la tácita reconducción crearía una excepción a las normas de contratación gubernamental que permitiría el desem-bolso de fondos públicos sin exigir el cumplimiento de aquellas normas de contratación gubernamental que pro-penden a proteger los recursos fiscales del Estado contra el dispendio, la prevaricación, el favoritismo y los riesgos de incumplimiento.
En resumen, el tribunal a quo confirmó parcialmente al tribunal sentenciador en cuanto a la renta correspondiente al periodo comprendido ente julio 2005 y el 30 de junio de 2006. A contrario sensu, revocó al tribunal de instancia en cuanto a la otorgación y desembolso correspondiente de fondos públicos para el pago de cánones para el periodo comprendido entre el 1 de julio de 2006 al 30 de julio de 2007, por el Contrato carecer de un precio cierto. Asi-mismo, revocó al tribunal de instancia en cuanto al uso de fondos públicos para pagar cánones de arrendamiento desde el 1 de julio de 2006 hasta el mes de febrero 2008, en virtud de la tácita reconducción.
Inconforme con la determinación del Tribunal de Apela-ciones, el Departamento de Estado presentó el recurso de certiorari que nos ocupa. En este plantea el siguiente error:
Erró el Tribunal de Primera Instancia al ordenar el pago de una alegada deuda que no está sustentada por un contrato debidamente perfeccionado conforme a la normativa aplicable a la contratación gubernamental. Petición de certiorari, pág. 9.
Atendida la petición de certiorari, el 9 de diciembre de 2011, acordamos no expedir el recurso de epígrafe. No obs-tante, el 3 de febrero de 2012, expedimos el auto en *739 reconsideración. Con el beneficio de la comparecencia de ambas partes, procedemos a resolver el recurso de autos.
II
Toda erogación de fondos en nuestro país está supeditada al imperativo constitucional siguiente:
Sólo se dispondrá de las propiedades y fondos públicos para fines públicos y para el sostenimiento y funcionamiento de las instituciones del Estado, y en todo caso por autoridad de ley. Art. VI, Sec. 9, Const. P.R., L.P.R.A., Tomo 1, ed. 2008, pág. 429.
Hemos sido consistentes en reiterar que esta disposición constitucional obliga al Estado a manejar los fondos públi-cos con los más altos principios éticos y fiduciarios. Véanse, por ejemplo: Lugo v. Municipio Guayama, 163 D.P.R. 208 (2004); Hatton v. Mun. de Ponce, 134 D.P.R. 1001 (1994); Mar-Mol Co., Inc. v. Adm. Servicios Gens., 126 D.P.R. 864 (1990).
Con el propósito de cumplir con este precepto constitucional, la Asamblea Legislativa ha aprobado legislación diseñada a imponer controles fiscales y de contratación gubernamental, de manera que las estructuras gubernamentales cumplan con este mandato constitucional de la sana administración de los fondos públicos. Así, por ejemplo, la Ley Núm. 230 de 23 de julio de 1974, según enmendada, conocida como Ley de Contabilidad del Gobierno de Puerto Rico, 3 L.P.R.A. sec. 283 et seq., establece la política pública del Estado en relación con el control y la contabilidad de los fondos y la propiedad pública. En general, la política pública plasmada en esta ley consiste en que la contabilidad del Gobierno
... provea la información financiera necesaria para la adminis-tración de las operaciones gubernamentales y para la prepa-ración y ejecución del presupuesto, y constituya un control *740 efectivo sobre los ingresos, desembolsos, fondos, propiedad y otros activos del gobierno... Art. 2(b) de la Ley Núm. 230 (3 L.P.R.A. sec. 283a(b)).
Asimismo, en RDT Const. Corp. v. Contralor I, 141 D.P.R. 424, 451 (1996), señalamos que la política pública de la Ley Núm. 230 requiere
... que los gastos y fondos públicos sean legítimos y legales y promuevan la máxima economía y óptima utilización de los recursos públicos y que los gastos del Gobierno se hagan dentro de un marco de utilidad, necesidad y austeridad. (Enfasis en el original).
Esta legislación, además, tiene el propósito de crear “control previo de todas las operaciones del gobierno” de manera que cada entidad gubernamental pueda planificar su presupuesto y programas de gobierno. (Enfasis suplido). Art. 2(e) de la Ley Núm. 230 (3 L.P.R.A. sec. 283a(e)). El Art. 9(a) del estatuto dispone que
[l]as dependencias ordenarán obligaciones y desembolsos de sus fondos públicos únicamente para obligar o pagar servicios, suministros de materiales y equipos, reclamaciones u otros conceptos que estuvieren autorizados por ley. El Secretario contabilizará las obligaciones y efectuará y contabilizará los desembolsos a través de documentos que sometan las depen-dencias, los cuales serán previamente aprobados para obliga-ción o pago por el jefe de la dependencia correspondiente o por el funcionario o empleado que éste designare como su repre-sentante autorizado. (Énfasis suplido). 3 L.P.R.A. sec. 283h(a).
De igual forma, el Art. 8(a) de la Ley Núm. 230 establece, en lo pertinente, que
Modas las asignaciones y los fondos autorizados para las atenciones de un año económico, serán aplicados exclusiva-mente al pago de los gastos legítimamente incurridos durante el respectivo año o al pago de obligaciones legalmente contraí-das y debidamente asentadas en los libros. (Enfasis suplido). 3 L.P.R.A. sec. 283g(a).
El concepto “obligación” es definido en el Art. 3(k) de la Ley Núm. 230 como
*741 [u]n compromiso contraído que esté representado por orden de compra, contrato o documento similar, pendiente de pago, fir-mado por autoridad competente para gravar las asignaciones, y que puede convertirse en el futuro en deuda exigible. 3 L.P.R.A. sec. 283b(k).
De las disposiciones de ley antes citadas se deduce que la facultad del Estado para desembolsar fondos públicos está limitada por los procedimientos y preceptos estableci-dos en las leyes. Además, como veremos más adelante, también están supeditados a los preceptos de sana admi-nistración pública delineados en nuestra jurisprudencia. Véanse, por ejemplo: Mun. Quebradillos v. Corp. Salud Lares, 180 D.P.R. 1003 (2011); Colón Colón v. Mun. de Arecibo, 170 D.P.R. 718 (2007); De Jesús González v. A.C., 148 D.P.R. 255 (1999).
Desde Ocasio v. Alcalde Mun. de Maunabo, 121 D.P.R. 37 (1988), hemos interpretado que el precepto de la sana política pública administrativa requiere que los Contratos Gubernamentales cumplan con los requisitos siguientes: “1) se reduzcan a escrito; 2) se mantenga un registro fiel con miras a prima facie establecer su existencia; 3) se remita copia a la Oficina del Contralor como medio de una doble constancia de su otorgamiento, términos y existencias, y 4) que se acredite la certeza de tiempo, esto es, haber sido realizado y otorgado quince (15) días antes”. Id., pág. 54. En aquella ocasión, aplicamos esa norma de contratación a los contratos municipales con entes privados. No obstante, no queda duda de que esa norma no solamente la hemos aplicado mediante leyes y normas aplicables a los municipios, sino que también la hemos extendido a la contratación gubernamental del Estado. Véase CMI Hospital v. Depto. Salud, 171 D.P.R. 313 (2007).
Así las cosas, y alejándonos de la norma general de los Contratos, hemos establecido que todo contrato entre un ente privado y el Estado debe constar por escrito para que tenga efecto vinculante entre las partes. Colón *742 Colón v. Mun. de Arecibo, supra, págs. 725-726. Este re-quisito es indispensable, pues
... tiene una insoslayable dimensión de sana administración pública, en la medida que permite salvaguardar los intereses de las partes contratantes frente a un incumplimiento, per-mite la ordenada utilización de los fondos municipales, evita la incertidumbre en la confección del presupuesto municipal y hace posible la adecuada identificación de la partida contra la cual se harán los desembolsos públicos en cumplimiento con la ley. Colón Colón v. Mun. de Arecibo, supra, pág. 730.
Asimismo, el contrato escrito “[c]onstituye un meca-nismo profiláctico tendiente a evitar pagos y reclamaciones fraudulentas e ilegales”. Íd., pág. 726.
Sin embargo, en Mun. Quebradillas v. Corp. Salud Lares, supra, examinamos si procedía una acción en cobro de dinero incoada por un municipio en contra de una corporación, aun cuando no existía un Contrato entre las partes. En esa ocasión concluimos que, aunque no existía un contrato escrito, un municipio tiene derecho a recobrar el dinero público que desembolsó incorrectamente mediante un acuerdo nulo. Íd., págs. 1015-1016. Fundamentamos nuestro dictamen en el hecho de que “estaríamos dejando en manos privadas unos fondos públicos que no le corresponden”. íd., pág. 1016. De esta forma aclaramos que nuestro razonamiento en casos de contratación gubernamental no se fundamenta meramente en favorecer a los municipios o al Estado, sino que evaluamos cada caso bajo el crisol de la sana administración y la protección de los fondos públicos.(8)
*743 La última ocasión en que nos expresamos en cuanto a la contratación gubernamental fue en ALCO Corp. v. Mun. de Toa Alta, supra. La controversia en ese caso surgió cuando ALCO obtuvo la adjudicación de la buena pro de una su-basta de Contrato de Obra para pavimentar un área en el Municipio de Toa Alta. Aún sin obtener un contrato escrito, ALCO comenzó a ejecutar la obra, entiéndase, a pavimentar. No fue hasta luego de completar el trabajo de pavimentación que las partes otorgaron el contrato escrito. No había duda de que el Municipio envió copia a la Oficina del Contralor y fue registrado en los libros municipales. Pasados varios intentos de cobro al Municipio, ALCO pre-sentó Demanda en cobro de dinero ante el Tribunal de Pri-mera Instancia. Ese tribunal desestimó la Demanda suma-riamente al entender que la rigurosidad de los requisitos de contratación con los municipios impedía que ALCO co-brara por una obra realizada previo al otorgamiento del Contrato escrito. El Tribunal de Apelaciones confirmó al tribunal sentenciador y resolvió que “de otra manera tras-tocaría el sistema de controles de desembolso de fondos públicos... pues se prestaría para que se convalidaran acuerdos llegados entre contratistas y municipios sin cum-plir con el proceso establecido por nuestro ordenamiento”, íd., pág. 553.
Aprovechamos aquella ocasión para rechazar tajante-mente la validación de Contratos Municipales retroactivos. En ese sentido, concluimos que era necesario suscribir un contrato escrito previo a la ejecución de la obra. “En caso contrario, se ignoraría el interés público de regular las ins-pecciones de la obra y restringir los parámetros de subcon-tratación, entre otras medidas cautelares...”. (Enfasis en el original). ALCO Corp. v. Mun. de Toa Alta, supra, pág. 551. Específicamente, establecimos que validar un Contrato re-troactivo podría fomentar el que un contratista realice la obra antes de la otorgación del Contrato escrito como me-dida de presión para la otorgación futura del contrato. Id., *744 pág. 543. Igualmente razonamos que validar los contratos retroactivos propende a que un contratista realice la obra y espere a que cambie la administración del municipio para convalidar su acto. Por lo tanto, validar esa teoría
... premiaría a quien se confabule con un funcionario corrupto del municipio para no seguir las normas de una administra-ción pública sana, consciente de que tan pronto culmine la obra tendrá derecho a reclamar compensación sin importar que no siguió la ley al contratar. Íd., pág. 544.
Además, al interpretar el Art. 8.004 de la Ley Núm. 81 de 30 de agosto de 1991, según enmendada, conocida como Ley de Municipios Autónomos del Estado Libre Asociado de Puerto Rico de 1991 (21 L.P.R.A. sec. 4354), resolvimos que esa actuación “comprometió los fondos de un año fiscal, para el pago de una obligación contraída ilegalmente en un año fiscal anterior”. (Enfasis suplido). ALCO Corp. v. Mun. de Toa Alta, supra, pág. 543.
En fin, concluimos que realizar una obra antes de tener un Contrato escrito violenta los conceptos de contratación gubernamental que propenden a una sana administración pública y control en los desembolsos de fondos públicos.
De acuerdo con lo anterior, pasamos a aplicar los funda-mentos esbozados al caso de autos para determinar si pro-cede el cobro de la renta del tercer piso de la propiedad arrendada, en virtud de un Contrato de Arrendamiento que fue otorgado posterior al uso y disfrute de la propiedad en cuestión.
III
Según intimado, hoy, en lugar de evaluar la validez de un Contrato de Obra otorgado retroactivamente por un municipio y un ente privado como lo hicimos en ALCO *745 Corp. v. Mun. de Toa Alta, supra, debemos examinar la validez de un Contrato de Arrendamiento de Cosas pactado retroactivamente por el Estado y un ente privado.
El Departamento de Estado alega que los contratos re-troactivos son contrarios a la normativa de la contratación gubernamental porque favorecen los acuerdos verbales, lo cual está al margen de la ley y de nuestros pronuncia-mientos. Por lo tanto, entiende que la reclamación en este caso no es exigible al fundamentarse en un Contrato retro-activo otorgado el 18 de julio de 2007, para cubrir cánones de arrendamiento correspondientes al periodo del 1 de julio de 2005 hasta el 30 de junio de 2006.
A contrario sensu, Jaap arguye que el piso tres (3) del edificio en cuestión fue arrendado originalmente mediante el Contrato Núm. 2001-000043, el cual tuvo vigencia desde el 16 de enero de 2000 hasta el 30 de junio de 2000. La recurrida postula, además, que el arrendamiento en cues-tión estuvo cubierto por el Contrato original pues en su Cláusula Tres (3) especifica que si ninguna de las partes notificaba a la otra su intención de enmendarlo o resol-verlo, se renovaría automáticamente por cinco (5) años o por diez (10) si la propiedad estaba localizada en Estados Unidos. La posición de la corporación es que el Departa-mento de Estado ocupó el piso tres (3) durante un periodo de tiempo que estaba cubierto por la cláusula de renova-ción automática dispuesta en el Contrato Núm. 2001-000043 y que este Contrato pudo extenderse por diez (10) años, hasta el 15 de enero de 2010. Finalmente, alegó que el Contrato Núm. 2008-000009 tuvo el efecto limitado de formalizar la renovación automática acordada en el primer Contrato. Diferimos.
Luego de examinar la totalidad del expediente, no pode-mos concluir que hubo una renovación automática del arrendamiento suscrito mediante el Contrato Núm. 2001-000043. No encontramos prueba o fundamento jurídico en el expediente que fundamente la posición de Jaap. Nuestra *746 conclusión se hace patente al examinar el Contrato Núm. 2008-000009, el cual dispone:
CUARTO-. El DEPARTAMENTO y JAAP Corporation, forma-lizaron un contrato de arrendamiento del tercer piso del Anti-guo edificio Marshall en el Viejo San Juan (renovable automá-ticamente por cinco años consecutivos) el 16 de enero de 2000 y el 15 de enero de 2005, terminó la vigencia del acuerdo contractual. (Énfasis suplido).
QUINTO: Que vencido el contrato entre las partes, JAAP Corporation consintió y estuvo de acuerdo en que el DEPARTA-MENTO continuara ocupando el tercer piso del mencionado Edificio para que los servicios de las juntas examinadoras a la ciudadanía no se interrumpieran y se vieran afectados, a pe-sar de no existir un acuerdo contractual escrito. (Énfasis suplido). Contrato Núm. 2008-000009, pág. 9, Apéndice, pág. 173.
De lo anterior se deduce, en primer lugar, que las partes convinieron e interpretaron que el Contrato original tuvo vigencia hasta el 15 de enero de 2005, y no se extendió por diez (10) años como argumenta Jaap. Es decir, el Departa-mento de Estado ocupó el tercer piso desde el 1 de julio de 2005 hasta el 29 de febrero de 2008 sin contrato escrito. En segundo lugar, estas cláusulas revelan que Jaap consintió expresamente a que el Departamento de Estado continuara ocupando el tercer piso, sin contrato escrito. En conclusión, no tiene mérito la alegación de Jaap a los efectos de que el Contrato Núm. 2001-000049 se renovó automáticamente. Esa interpretación acomodaticia no encuentra fundamento y es contraria a las claras expresiones realizadas por am-bas partes en el Contrato Núm. 2008-000009. No obstante, resta determinar si el Contrato posterior tuvo el efecto de crear una obligación válida para el pago retroactivo de cá-nones de arrendamiento.
El canon de arrendamiento que Jaap pretende obtener en virtud del Contrato Núm. 2008-000009, tiene el propósito de cobrar una suma ascendente a ciento dieciséis mil cuatrocientos cincuenta y nueve dólares con once centavos ($116,459.11), para así retribuir a Jaap por el uso y *747 disfrute retroactivo del piso tres (3). En otras palabras, lo que se pretende reconocer en el Contrato Núra. 2008-000009 es una obligación de pago que fue generada sin tener un contrato escrito y perfeccionado conforme a las for-malidades que le aplican a la contratación gubernamental. Sin embargo, según mencionamos anteriormente, en ALCO Corp. v. Mun. de Toa Alta, supra, pág. 551, hicimos claro que es necesario que un ente privado se asegure de obtener un contrato escrito previo a la ejecución de una obra o el otorgamiento de prestaciones y contraprestacio-nes, como es en este caso permitir el uso y disfrute del tercer piso del edificio propiedad de Jaap.
Un Contrato retroactivo como el de autos presupone una de dos (2) situaciones: (1) que había un contrato verbal entre el Estado y la entidad privada y este último estuvo ejecutándolo u otorgando prestaciones sin tener un acuerdo escrito, o (2) que simplemente no había ningún tipo de contrato mientras el ente privado proveía presta-ciones al Estado, con la esperanza de que algún día se otor-gara un Contrato a su favor y fuera retribuido por sus bie-nes o servicios. Cualquiera de las dos (2) situaciones anteriores promueve la no otorgación de Contratos escritos mientras se intenta crear obligaciones para gravar las asignaciones de fondos públicos. Sin lugar a dudas esto es contrario a la norma de contratación gubernamental que exige que los contratos entre el gobierno y un ente privado se rijan únicamente por contratos escritos. ALCO Corp. v. Mun. de Toa Alta, supra; Colón Colón v. Mun. de Arecibo, supra. Basta recordar que de lo contrario, estaríamos pre-miando a quien se confabule con un funcionario corrupto “para no seguir las normas de una administración pública sana, consciente de que... tendrá derecho a reclamar com-pensación sin importar que no siguió la ley al contratar”. ALCO Corp. v. Mun. de Toa Alta, supra, pág. 544.
En este caso, Jaap permitió que el Departamento de Estado disfrutara y usara el tercer piso del edificio. Esto *748 nos lleva a concluir que Jaap otorgó prestaciones propias de un Contrato de Arrendamiento —dar el “goce o uso de una cosa por tiempo determinado” — (9) con la esperanza de que, aun sin Contrato escrito, el Departamento de Estado suscribiera en el futuro un Contrato escrito en virtud del cual pudiera gravar fondos públicos para el pago de cáno-nes de arrendamiento.
Hoy resolvemos que la contratación retroactiva sobre el arrendamiento de un bien, no solamente está al margen de la normativa de la contratación municipal, sino que también está reñida con la contratación gubernamental en general. Ciertamente, la contratación gubernamental retroactiva hace inoperante todo control previo a la formación de una obligación del Gobierno, lo cual es contrario a la política pública establecida en el Art. 2(e) de la Ley Núm. 230, supra. Esta práctica impide, además, que terceros como la Oficina del Contralor cumplan con la política pública de la Ley Núm. 230 y que los ciudadanos puedan obtener el contrato escrito para pasar juicio sobre la contratación, pues el contrato se escribe y publica luego de la ejecución y consumación de las obligaciones allí dispuestas. ALCO Corp. v. Mun. de Toa Alta, supra.
Al aplicar la normativa antes expuesta, colegimos que la reclamación del recurrido no es exigible. No podemos concluir de otra manera, pues la reclamación en controver-sia se apoya en un Contrato otorgado el 18 de julio de 2007 para cubrir los cánones de arrendamiento correspondien-tes al periodo del 1 de junio de 2005 hasta el 30 de junio de 2006. Esta actuación comprometió los fondos de un año fiscal para el pago de una obligación contraída ilegalmente en un año fiscal anterior; acto que fue realizado en contra-vención al Art. 8(a) de la Ley Núm. 230 (3 L.P.R.A. sec. 283g(a)). Véase ALCO Corp. v. Mun. de Toa Alta, supra, *749 pág. 543. Este Contrato resulta ser ineficaz.(10) El Estado no puede realizar un desembolso de fondos públicos en con-travención a la ley y la jurisprudencia interpretativa de los estrictos requisitos que aplican a la contratación gubernamental. En consecuencia, no procede ordenarle al Departamento de Estado el cumplimiento del Contrato Núm. 2008-000009.(11)
IV
Por los fundamentos antes expuestos, revocamos en parte el dictamen recurrido emitido por el Tribunal de Ape-laciones en cuanto al pago de cánones de arrendamiento a Jaap por ciento dieciséis mil cuatrocientos cincuenta y nueve dólares con once centavos ($116,459.11).

Se dictará sentencia de conformidad.

El Juez Presidente Señor Hernández Denton no interviene. La Jueza Asociada Señora Fiol Matta y la Juez Asociada Señora Rodríguez Rodríguez no intervinieron.

 Moción Conjunta de Hechos Estipulados, Estipulación Núm. 5, Apéndice, pág. 141.

 Íd., Estipulación Núm. 8, Apéndice, pág. 142.

 Íd., Estipulación Núm. 7, Apéndice, pág. 141.

 Íd.

 Íd.

 Íd. Conforme la Estipulación Núm. 7, “[1]os dos primeros folios del docu-mento no contienen firma alguna, mientras que los cinco (5) folios subsiguientes titulados ‘Hojas de Continuación’ contienen la firma del señor Carlos E. Cortés Díaz”.

 El Departamento de Estado no argumentó ante este Tribunal la aplicabilidad de la Ley Núm. 237-2004; por tal razón, rechazamos hacer una interpretación del referido estatuto en esta ocasión.

 A tales efectos, dispusimos:
“No hacer la distinción cuando es un ente público el que reclama permitiría que un funcionario inescrupuloso favorezca a ciertos contratistas, pagándoles de ante-mano por unos servicios, pero sin un contrato escrito, con la intención de que cuando se inicie el proceso legal de cobro de dinero, se pueda presentar como defensa que el contrato no cumple con los requisitos formales exigidos por ley y el contratista no tenga que devolver lo que se le pagó ilegalmente”. Mun. Quebradillas v. Corp. Salud Lares, 180 D.P.R. 1003, 1016 (2011).

 Art. 1433 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 4012.

 por 0(;r0 ia(j0) ¡a operación de la figura de la tácita reconducción presupone la existencia de un contrato válido. Art. 1456 del Código Civil, 31 L.P.R.A. sec. 4063. Al resolver que el Contrato Núm. 2008-000009 es ineficaz, resulta innecesaria cual-quier expresión en torno a la operación de la doctrina de la tácita reconducción en los contratos gubernamentales.

 La recurrida argumenta, en la alternativa, que de pautar una norma dis-tinta a la esbozada en su alegato, no debemos aplicarla al caso de autos porque al otorgar el Contrato Núm. 2008-000009, Jaap confió en el estado de Derecho pautado por la Orden Ejecutiva Núm. 2006-23 de 22 de junio de 2006. Esa Orden Ejecutiva disponía, en esencia, que las agencias y dependencias públicas podían otorgar con-tratos formales con vigencia retroactiva. Sin adentrarnos en la validez de esta Orden Ejecutiva, la realidad es que los contratos retroactivos han sido objeto de contunden-tes señalamientos por parte de la Oficina del Contralor y el Departamento de Justicia. Véanse: Oficina del Contralor, Carta Circular OC-98-01 de 8 de julio de 1997; Op. Sec. Just. Núm. 2001-14 de 2 de julio de 2001. No fue hasta la emisión de la Orden Ejecutiva que se fomentó por primera vez el uso de contratos formales retroactivos.
La solicitud de Jaap no cambia nuestro razonamiento. Es suficiente examinar la cronología de los hechos para saber que Jaap permitió que el Departamento de Es-tado gozara y disfrutara el tercer piso del edificio en cuestión, aun cuando ni siquiera existía la Orden Ejecutiva Núm. 2006-23, supra.